IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

**JACOB GALLOWAY**                                                          **PLAINTIFF**

**v.**                              **CIVIL ACTION NO. 2:19-CV-76-KS-MTP**

**SANDERSON FARMS, INC.**                                       **DEFENDANT**

### MEMORANDUM OPINION AND ORDER

For the reasons provided below, the Court **grants in part and denies in part** Defendant's Motion for Summary Judgment [48]. The Court grants the motion as to Plaintiff's FMLA interference claim, but it denies the motion as to Plaintiff's FMLA retaliation claim. The Court also declines to dismiss Plaintiff's demands for back pay and liquidated damages, but the Court agrees that Defendant is entitled to an offset against any back pay award equal to the income Plaintiff earned from other sources after Defendant fired him.

### I. BACKGROUND

Plaintiff was a pilot for Defendant. At the suggestion of Defendant's Manager of Aircraft Operations, Zane Lambert, Plaintiff took several months of paid leave under the Family and Medical Leave Act ("FMLA"). While on leave, Plaintiff took a flight for another employer. Defendant's FMLA leave policies specifically prohibited "double dipping," or working for pay while on paid leave.

Defendant's other pilots saw Plaintiff's vehicle parked at a hangar owned by another company, Boots Smith, and they heard him making radio calls from Boots

Smith's aircraft. They were displeased that Plaintiff was working for another employer while on paid leave because they had to shoulder additional work in his absence. Plaintiff's immediate supervisor, Bryon Kittler, confronted him about it, and Plaintiff initially lied, stating that he had just been visiting a friend at Boots Smith's hangar. Later, Plaintiff admitted that he had been double-dipping, working for someone else while on paid FMLA leave. Lambert contacted Boots Smith and confirmed that Plaintiff had taken a contract pilot job, but Plaintiff declined any payment for the flight after he got caught.

Plaintiff eventually completed his FMLA leave. When he returned, his working relationships with Defendant's other pilots were difficult. Plaintiff says they resented him for taking FMLA leave. Defendant says that Plaintiff had a bad attitude, and that he harassed and threatened his coworkers because they snitched on him for double-dipping while on leave. On Plaintiff's first day back at Defendant's main hangar in Laurel, Mississippi, he inadvertently sent a text message to his coworkers that he had intended to send to a friend. The message read: "I did. Nothing to show so fuck them. Might milk another couple of months out you know wait till your birthday and see what shape the world is in." Plaintiff admitted during his deposition that this message referred to Defendant and its employees.

The other pilots informed Lambert of the text message, and he met with Plaintiff. He asked Plaintiff to resign, but Plaintiff declined. So, he fired Plaintiff. On the official paperwork, Lambert cited "disruptive and inappropriate conduct" as the

2

reason for Plaintiff's termination.

Plaintiff filed this lawsuit, alleging that Defendant interfered with his exercise of rights under the FMLA, and that Defendant fired him in retaliation for his exercise of rights under the FMLA. Defendant filed a Motion for Summary Judgment [48], which the Court now addresses.

## II. STANDARD OF REVIEW

Rule 56 provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P.*, 627 F.3d 134, 138 (5th Cir. 2010). "Where the burden of production at trial ultimately rests on the nonmovant, the movant must merely demonstrate an absence of evidentiary support in the record for the nonmovant's case." *Cuadra v. Houston Indep. Sch. Dist.*, 626 F.3d 808, 812 (5th Cir. 2010) (punctuation omitted). The nonmovant "must come forward with specific facts showing that there is a genuine issue for trial." *Id.* "An issue is material if its resolution could affect the outcome of the action." *Sierra Club*, 627 F.3d at 138. "An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party." *Cuadra*, 626 F.3d at 812.

The Court is not permitted to make credibility determinations or weigh the evidence. *Deville v. Marcantel*, 567 F.3d 156, 164 (5th Cir. 2009). When deciding whether a genuine fact issue exists, "the court must view the facts and the inference

to be drawn therefrom in the light most favorable to the nonmoving party." *Sierra Club*, 627 F.3d at 138. However, "[c]onclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." *Oliver v. Scott*, 276 F.3d 736, 744 (5th Cir. 2002).

### III. DISCUSSION

#### A. *FMLA Interference*

First, Defendant argue that Plaintiff's FMLA interference claim fails because he has no evidence that he was denied a benefit to which he was entitled under the FMLA. In response, Plaintiff argues that Defendant interfered with his ability to take FMLA leave by firing him after he had returned from FMLA leave.

"The FMLA grants an eligible employee up to twelve weeks of annual unpaid leave for a serious health condition that prevents him from performing the functions of his job." *Tatum v. Southern Company Servs., Inc.*, 930 F.3d 709, 713 (5th Cir. 2019) (citing 29 U.S.C. § 2612(a)(1)(D)). "An employer may not interfere with the exercise of any right provided under the Act . . . ." *Id.* (citing 29 U.S.C. § 2615(a)). "To make a *prima facie* case of interference, a plaintiff must demonstrate that (1) he was an eligible employee; (2) his employer was subject to FMLA requirements; (3) he was entitled to leave; (4) he gave proper notice of his intention to take FMLA leave; and (5) his employer denied him the benefits to which he was entitled under the FMLA." *Id.*

4

The Court will assume that Plaintiff can prove the first four elements of an FMLA interference claim. It appears to be undisputed, though, that Defendant did not deny Plaintiff the benefits to which he was entitled under the FMLA. Plaintiff admitted in his briefing that he took FMLA leave from January 11, 2017, to May 29, 2017. He has not alleged, argued, or presented any evidence that Defendant prevented him from taking FMLA leave or otherwise denied him benefits to which he was entitled under the FMLA. Instead, he argues that Defendant fired him, at least in part, because he took FMLA leave. That is a retaliation claim, not an interference claim. Therefore, the Court grants Defendant's motion as to Plaintiff's FMLA interference claim.[1]

## B.  *FMLA Retaliation*

Next, Defendant argues that Plaintiff can not make out a *prima facie* case of FMLA retaliation because he has no evidence that it terminated him because he used FMLA leave. Defendant further argues that Plaintiff can not prove that its non-retaliatory reason for his termination was pretextual. In response, Plaintiff argues that the record contains evidence that Defendant's proffered reason for his termination is but one of its reasons, the other of which was retaliation.

---

[1] *Hoskins v. GE Aviation*, 2019 WL 1339246, at *8 (N.D. Miss. Mar. 25, 2019); *see also Seeger v. Cincinnati Bell Tel. Co., LLC*, 681 F.3d 274, 283 (6th Cir. 2012) (where plaintiff was not denied any benefit to which he was entitled under the FMLA, district court correctly confined analysis to the retaliation claim); *Stallings v. Hussmann Corp.*, 447 F.3d 1041 (8th Cir. 2006) (district court correctly confined analysis to retaliation claim where plaintiff did not prove employer denied him a benefit to which he was entitled under the FMLA); *Ross v. Gilhuly*, 755 F.3d 185, 192 (3rd Cir. 2014) (where plaintiff received all benefits he was due under the FMLA, he failed to make a *prima facie* showing of interference).

5

"Retaliation claims for exercising FMLA rights are subject to the *McDonnell Douglas* burden-shifting framework." *Amedee v. Shell Chem., L.P.*, 953 F.3d 831, 835 (5th Cir. 2020). First, the employee must prove a *prima facie* case of retaliation, by showing that "(1) he engaged in a protected activity, (2) the employer discharged him, and (3) there is a causal link between the protected activity and the discharge." *Id.* If the employee proves a *prima facie* case of retaliation, the burden shifts to the employer to "articulate a legitimate, nondiscriminatory reason for the adverse employment action." *Id.* If the employer does so, the burden shifts back to the employee to prove "either that (a) the employer's proffered reason is a pretext for discrimination, or . . . (b) that the employer's reason, although true, is but one of the reasons for its conduct, another of which was discrimination." *Richardson v. Monitronics Int'l, Inc.*, 434 F.3d 327, 333 (5th Cir. 2005). If the employee meets this evidentiary burden, the employer must provide "sufficient evidence to establish as a matter of law that it would have taken the adverse employment action despite its retaliatory motive." *Ion v. Chevron USA, Inc.*, 731 F.3d 379, 390 (5th Cir. 2013). "The employer's final burden is effectively that of proving an affirmative defense." *Id.*

Defendant argues that the Court must apply the causation standard set forth in *University of Texas Southwestern Medical Center v. Nassar*, 570 U.S. 338, 133 S. Ct. 2517, 186 L. Ed. 2d 503 (2013). In *Nassar*, the Supreme Court "limited the applicability of the mixed-motive framework in cases involving Title VII and the Age Discrimination in Employment Act." *Ion*, 731 F.3d at 390. It "held that to satisfy the

6

'causal link' requirement of a Title VII retaliation claim, the employee must provide substantial evidence that 'but for' exercising protected rights, she would not have been discharged." *Wheat v. Florida Parish Juvenile Justice Comm'n*, 811 F.3d 702, 705 (5th Cir. 2016). But neither the Supreme Court nor the Fifth Circuit have decided "whether the heightened 'but for' causation standard required for Title VII retaliation claims applies with equal force to FMLA retaliation claims." *Id.* (citing cases).

Although the undersigned judge agrees that it makes sense for the same causation standard to apply in the context of each of these statutes (Title VII, ADEA, FMLA), the Court declines to extend *Nassar*'s holding to FMLA retaliation claims. Until the Fifth Circuit rules otherwise, the cases applying the mixed-motives framework to FMLA retaliation claims are binding authority. *See Richardson*, 434 F.3d at 333; *Ion*, 731 F.3d at 390. Therefore, the Court will apply the mixed-motives framework.

Defendant does not dispute that Plaintiff engaged in a protected activity, and that he was terminated. Rather, Defendant argues that Plaintiff can not prove that he was terminated because he took FMLA leave. Plaintiff presented evidence that creates a genuine dispute of material fact as to whether his taking FMLA leave was a motivating factor in Defendant's decision to terminate him.

Zane Lambert, Defendant's Manager of Aircraft Operations, agreed that the profane text message was just "the final straw." Exhibit B to Response at 12, *Galloway v. Sanderson Farms, Inc.*, No. 2:19-CV-76-KS-MTP (S.D. Miss. May 5,

2020), ECF No. 54-2. He testified that Defendant's other pilots complained, saying "if [Defendant] can be flying for somebody else, why is he on leave?" *Id.* According to Lambert, Defendant was "short-staffed" already, and "[t]he grumbling . . . came from this direct thing. And, yes, the question was probably asked: If [Plaintiff's] on leave, if he has to be on leave . . . why is he flying for somebody else?" *Id.* at 13. Likewise, in an administrative hearing before the Mississippi Department of Employment Security, Lambert stated that it "started causing tension amongst [Plaintiff's] peer group that . . . he's on paid leave and yet he's off flying for someone else . . . ." *Id.* at 20. Lambert emphasized that the text message was not the sole reason for Plaintiff's termination; rather, it "was the final straw." *Id.* at 21.

Assuming that Defendant met its burden of articulating a legitimate, nondiscriminatory reason for terminating Plaintiff, this evidence is also sufficient to create a genuine dispute of material fact as to whether that "reason, although true, is but one of the reasons for its conduct, another of which was discrimination." *Richardson*, 434 F.3d at 333. Therefore, the Court concludes that Plaintiff satisfied his burden at the pretext stage of the analysis, and Defendant must provide "sufficient evidence to establish as a matter of law that it would have taken the adverse employment action despite its retaliatory motive." *Ion*, 731 F.3d at 390. As stated above, this "burden is effectively that of proving an affirmative defense." *Id.* The Court believes that a jury could reasonably conclude, based on Lambert's testimony, that Plaintiff's coworkers resented him for taking months of paid leave,

8

and that their resentment influenced Defendant's decision to terminate him. Therefore, the Court finds that there is a genuine dispute of material fact as whether Defendant would have fired Plaintiff despite such influence.

## C.     *Damages*

### 1.     *After-Acquired Evidence*

Defendant argues that Plaintiff is not entitled to back pay because he admitted, in the course of discovery, that he committed violations of Defendant's policy regarding working for pay while on paid FMLA leave. Plaintiff admitted in his deposition that he did, in fact, get paid to fly for another company while on paid FMLA leave. Exhibit B to Motion for Summary Judgment at 30, *Galloway v. Sanderson Farms, Inc.*, No. 2:19-CV-76-KS-MTP (S.D. Miss. Apr. 15, 2020), ECF No. 48-2.

The FMLA provides that any employer who violates it "shall be liable" to the affected employee for damages including 1) any salary or wages lost because of the violation, 2) interest calculated at the prevailing rate, and 3) "an additional amount of liquidated damages" equal to the amount of salary or wages awarded. 29 U.S.C. § 2617(a)(1)(A). However, "[w]hen there is after-acquired evidence that would justify a plaintiff's termination, . . . back pay may be awarded from the date of the unlawful discharge to the date the new information was discovered." *Weeks v. Coury*, 951 F. Supp. 1264, 1274 (S.D. Tex. 1996) (citing *McKennon v. Nashville Banner Pub. Co.*, 513 U.S. 352, 115 S. Ct. 879, 886-87, 130 L. Ed. 2d 852 (1995)). "In order to affect the remedy, the employer must first establish that the wrongdoing was of such severity

9

that the employee in fact would have been terminated on those grounds alone if the employer had known of it at the time of the discharge." *Id.* Phrased differently, "the employer seeking to rely upon after-acquired evidence must establish that the plaintiff would have been discharged upon discovery of the after-acquired information in order to justify limitation of the plaintiff's relief." *Id.* (citing *Shattuck v. Kinetic Concepts, Inc.*, 49 F.3d 1106, 1108 (5th Cir. 1995)).

The Court believes that there is a genuine dispute of material fact as to whether Defendant would have fired Plaintiff for double-dipping while on FMLA leave, apart from the other alleged reasons for his termination. It is undisputed that Defendant knew Plaintiff had accepted a contract flight for pay. Defendant did not learn until discovery in this case that Plaintiff actually received payment for that flight, despite claiming at the time that he declined payment. Defendant knew, however, that Plaintiff attempted to violate the policy forbidding outside work while on paid FMLA leave, and that the only reason he purportedly did not accept payment was because he got caught. Despite this knowledge, Defendant did not fire Plaintiff until the profane text message, and Lambert described the text message as the "final straw," Exhibit B to Response [54-2], at 12, which implies that Plaintiff's attempt to double-dip was not sufficient reason, standing alone, to fire him.

2.   *Set-Offs*

Alternatively, Defendant argues that it is entitled to a set-off against any back pay award equal to income Defendant earned from other sources. Plaintiff did not

10

respond to this argument in briefing.

"'Back pay' commonly refers to the wages and other benefits that an employee would have earned if the unlawful event that affected the employee's job related compensation had not occurred." *Rutherford v. Harris County*, 197 F.3d 173, 191 (5th Cir. 1991). Back pay is calculated from the date of the adverse employment action to the date of judgment. *Id.* However, "[c]ourts uniformly offset interim earnings from back pay awards in order to make the plaintiff whole, yet avoid windfall awards." *Stephens v. C.I.T. Group/Equip. Fin., Inc.*, 955 F.2d 1023, 1028 (5th Cir. 1992); *see also Harkless v. Sweeny Indep. Sch. Dist.*, 427 F.2d 319, 324 (5th Cir. 1970). Therefore, the Court agrees that Defendant is entitled to an offset against any back pay award equal to the income Plaintiff earned from other sources after Defendant fired him. An instruction will be provided to the jury to that effect.

*3.     Liquidated Damages*

Finally, Defendant argues that Plaintiff is not entitled to liquidated damages. The FMLA specifically provides that an employer who violates it "shall be liable" for "an additional amount of liquidated damages" equal to the amount of salary or wages awarded. 29 U.S.C. § 2617(a)(1)(A). But if an employer who has violated the FMLA "proves to the satisfaction of the court that the act or omission . . . was in good faith and that the employer had reasonable grounds for believing that the act or omission was not a violation" the Court may decline to award liquidated damages. 29 U.S.C. § 2617(a)(1)(A)(iii). To be clear, though, "even if a trial court is satisfied that an

11

employer acted both in good faith and reasonably, it may still award liquidated damages at its discretion . . . ." *Nero v. Indus. Molding Corp.*, 167 F.3d 921, 929 (5th Cir. 1999). This discretion "must be exercised consistently with the strong presumption under the statute in favor of" liquidated damages. *Id.* "[I]t is not the employee's burden to disprove good faith. Rather, the employer has the substantial burden of proving its good faith." *Id.* at 928 n. 3.

As explained above, the Court believes that a jury could reasonably conclude, based on Lambert's testimony, that Plaintiff's coworkers resented him for taking months of paid leave, and that their resentment influenced Defendant's decision to terminate him. Therefore, the Court finds that there is a genuine dispute of material fact as to whether Defendant acted in good faith, and it declines to grant summary judgment as to Plaintiff's demand of liquidated damages.

## IV. CONCLUSION

For the reasons provided below, the Court **grants in part and denies in part** Defendant's Motion for Summary Judgment [48]. The Court grants the motion as to Plaintiff's FMLA interference claim, but it denies the motion as to Plaintiff's FMLA retaliation claim. The Court also declines to dismiss Plaintiff's demands for back pay and liquidated damages, but the Court agrees that Defendant is entitled to an offset against any back pay award equal to the income Plaintiff earned from other sources after Defendant fired him.

SO ORDERED AND ADJUDGED this 6th day of July, 2020.

12

/s/   Keith Starrett
KEITH STARRETT
UNITED STATES DISTRICT JUDGE

13